[Cite as *State v. Hooks*, 2016-Ohio-5098.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

CHRISTOPHER M. HOOKS,

    DEFENDANT-APPELLANT.

CASE NO. 7-15-10

O P I N I O N

Appeal from Henry County Common Pleas Court
Trial Court No. 15-CR-0003

Judgment Affirmed in Part, Reversed in Part,
And Cause Remanded.

Date of Decision:  July 25, 2016

APPEARANCES:

    *Billy D. Harmon* for Appellant

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Christopher M. Hooks ("Hooks") brings this appeal from the judgment of the Court of Common Pleas of Henry County finding him guilty of two counts of burglary and sentencing him to an aggregate sentence of eleven years in prison. On appeal Hooks claims that 1) the evidence was insufficient, 2) the verdict was against the manifest weight of the evidence, 3) the trial court erred by allowing the state to amend the indictment during the trial, and 4) the sentence imposed was contrary to law. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} On January 7, 2015, the Napoleon Police Department received three separate reports regarding possible burglaries. The first report came from Tim Hoops ("Hoops") who indicated that when he came home from work, he discovered that a Kohls bag, towels, and toothbrushes were missing from his apartment. A second report was made by witnesses who saw Hooks leaving an apartment. The third report was made by Sara Sweet regarding another unlawful entrance into an apartment.

{¶3} On January 21, 2015, the Henry County Grand Jury indicted Hooks on four counts: 1) Burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree; 2) Burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree; 3) Aggravated Burglary in violation of R.C. 2911.11(A)(1), a

felony of the first degree; 4) Possessing Criminal Tools in violation of R.C. 2923.24(A), a felony of the fifth degree. Doc. 2. The State moved on April 23, 2015 to amend Count Three of the indictment from Aggravated Burglary to Burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree and to dismiss Count Four. Doc. 36. Hooks objected to the amendment on the grounds that it changed the name of the charged offense and the revised code section under which he was charged. Doc. 37. A hearing was held on the motion on April 28, 2015. The trial court denied the motion to amend the indictment, but granted the motion to dismiss Count Four of the indictment. Doc. 62.

{¶4} A jury trial was held on the three remaining counts from April 29 to April 30, 2015. The State renewed its motion to amend Count Three to Burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, and the trial court granted the motion. Apr. 30 Tr. 97. At the conclusion of the trial, the jury returned a verdict of not guilty of Count One, not guilty of Count Two as charged in the indictment, guilty of the lesser included offense of Burglary for Count Two, and guilty of Burglary for Count Three.[1] Doc. 45-49. On May 29, 2015, a sentencing hearing was held. Doc. 63. The trial court sentenced Hooks to serve three years in prison for the conviction pursuant to Count Two and eight years in

---

[1] This court notes that the verdict forms do not specify the degree of offenses for which Hooks was convicted, instead just stating that he was found guilty of "Burglary". The only way to know which statutory sections applied or the level of the offenses would be to review the sentencing entry. However, due to the outcome of the appeal, the trial court may address this issue on resentencing and we need not address it at this time.

prison for the conviction pursuant to Count Three. *Id.* The trial court ordered that the sentences be served consecutively for an aggregate sentence of eleven years in prison. *Id.*

{¶5} On June 8, 2015, Hooks filed his notice of appeal from the above judgment. Doc. 64. Hooks raises the following assignments of error on appeal.

### First Assignment of Error

**The trial court erred in failing to grant [Hooks'] motions for acquittal, pursuant to Crim.R. 29, and [Hooks] was denied due process, as evidence in this case was insufficient to sustain a conviction.**

### Second Assignment of Error

**The verdicts in this case were against the manifest weight of the evidence.**

### Third Assignment of Error

**The trial court committed reversible error when it permitted an amendment to Count Three of the indictment that changed the name or identity of the crime charged.**

### Fourth Assignment of Error

**The sentence imposed upon [Hooks] was contrary to law and an abuse of discretion.**

{¶6} Initially, this court notes that the State has chosen not to file a brief in this case. "If an appellee fails to file the appellee's brief within the time provided by this rule, or within the time as extended, the appellee will not be heard at oral argument; and in determining the appeal, the court may accept the appellant's

statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App.R. 18(C).

*Sufficiency of the Evidence*

{¶7} Hooks alleges in his first assignment of error that the trial court erred by denying his motions for acquittal. "The court on motion of a defendant * * * after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). When reviewing a question of sufficiency of the evidence, an appellate court determines whether, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find the essential elements of the crime charged proven beyond a reasonable doubt. *State v. Blanton*, 3d Dist. Marion No. 9-15-07, 2015-Ohio-4620.

{¶8} Here, Hooks was convicted pursuant to Count Two of the indictment of the lesser included offense of burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree. The State was required to prove that Hooks 1) by force, stealth, or deception 2) trespassed in an occupied structure 3) with the purpose to commit a criminal offense. R.C. 2911.12(A)(3). An occupied structure is defined as any house which is occupied as a permanent habitation, regardless of whether any person is actually present. R.C. 2909.01(C)(2).

{¶9} Hoops testified that when he came home from lunch, he noted that someone had broken into his home during his absence. Apr. 29, 2015 Tr. 121-122. He knew this because part of the door jamb was lying on the floor. *Id.* After walking through the house with an officer, he discovered that a Kohls bag containing blue green towels and a package of toothbrushes were missing from the home. *Id.* at 122-27. Hoops then identified a photo of a Kohls bag photographed in Hooks' car as appearing to contain an item the same color as the missing towels. *Id.* at 124. Additionally, Detective Jamie Mendez testified that boots found on Hooks when he was arrested had a similar tread pattern to prints found in the snow outside of Hoops' apartment. Apr. 30, 2015 Tr. 75. Even viewing this evidence in a light most favorable to the prosecution, there is no evidence presented that Hooks was the person who trespassed in the apartment. All the evidence shows is that someone did so and they stole some towels that were in a generic Kohls shopping bag and some toothbrushes. There was evidence that there was a generic Kohls shopping bag seen in Hooks' car, but the content was not known. There was a footprint found in the snow on a sidewalk outside of the apartment that was similar to that of the boots worn by Hooks on the day in question. However, this evidence does not show that it was actually Hooks who was at the scene. The snow had been there for days and there was no evidence that the print was from the same day as the burglary. Additionally, there was a

great deal of evidence presented that indicated that multiple brands of boots had the same tread pattern and were sold at multiple stores, such as Walmart and Meijers. Even if it was Hooks who was present, there is no evidence that he was the person who trespassed in the apartment.[2] On any given day, there could be numerous cars containing a generic Kohls shopping bag, so the fact that one was seen in Hooks' vehicle is not sufficient to infer that he stole it from Hoops' residence.[3] The State presents no argument on appeal that would indicate that the evidence was sufficient. Even viewing the evidence in a light most favorable to the State, the evidence is not sufficient to find beyond a reasonable doubt that Hooks committed burglary as set forth in Count Two of the indictment.

{¶10} As to Count Three, Hooks was convicted of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree. This charge means the State was required to prove that Hooks 1) by force, stealth, or deception 2) trespassed in an occupied structure 3) when another person, other than an accomplice, was present or likely to be present 4) with the intent to commit a criminal offense. R.C. 2911.12(A)(2).

{¶11} Michael Bailey ("Bailey") testified that he lived at an apartment on Oakwood Avenue. Apr. 29, 2015 Tr. 155. When he returned home from going to

---

[2] This does not even take into consideration that the neighboring apartment in the duplex was also broken into on that same morning, but Hooks was not convicted of that offense because the boot print on the door of that apartment did not match Hooks'.

[3] We recognize that the State would have been able to present additional evidence had there not been mistakes made that led to the suppression of evidence. However, that evidence was not presented to the jury and may not be considered by us on appeal.

lunch with family members on January 7, 2015, he noticed that it looked like someone had "used a crowbar" on his door and it would not open. *Id*. at 156-57. Bailey testified that his nephew went around back and then the front door opened and someone ran past him out of the apartment. *Id*. at 157. Bailey and his son, Anthony Cruz-Bailey ("Anthony") then started chasing after the man. *Id*. at 158-59. Eventually Anthony tackled the man and held him until the police arrived. *Id*. at 160. Bailey identified the man they caught as Hooks. *Id*. at 161. Bailey indicated that nothing was taken from the apartment that day. *Id*. at 165.

{¶12} Aurora Cruz-Bailey ("Aurora") testified that she was living in the apartment with her father, Bailey, on the date in question. *Id*. at 167. When they returned from lunch, she went to the office and was walking back when someone ran past her, hitting and pushing her in the process. *Id*. at 168. Aurora identified Hooks as the man who ran into her while he was running away from the area around the apartment. *Id*. at 170. When she went into the apartment, she saw the door had been forced open and her television was on the floor near the door. *Id*.

{¶13} Anthony testified that he also lived in the apartment on the date in question. *Id*. at 176. When they arrived home, the door would not open. *Id*. at 178. A minute or so later, a man came running out of the front door. *Id*. Anthony then began chasing him and followed him across the parking lot. *Id*. at 179. Anthony testified that he lost sight of the man for a while, but then saw him again

running back towards him. *Id.* at 181. The man then hit the road, slipped, and Anthony then tackled him. *Id.* Anthony identified the man as Hooks. *Id.* at 182.

{¶14} Officer Patrick Lannan ("Lannan") testified that he was dispatched to the scene at the apartment complex on Oakwood Avenue after being notified that a suspect in a burglary was being detained by the victims. Apr. 30, 2015 Tr. 6. When he arrived, Hooks was being held down by another person. *Id.* at 8. Lannan identified Hooks in the courtroom as being the man being detained at the scene. *Id.* at 10.

{¶15} Based upon the evidence stated above and viewing it in a light most favorable to the State, there is sufficient evidence that Hooks was the person who trespassed into an occupied structure as he was seen running out of the house by multiple witnesses. Testimony was presented that it was likely that a person would be there at that time as they had only left to go out to lunch and run some errands. Finally, there was testimony that Aurora's television had been moved from its normal location to the floor by the door, from which a reasonable juror could infer that Hooks intended to commit the criminal offense of theft while in the apartment. As there was evidence on each element of the offense for which he was convicted, the verdict as to amended Count Three was supported by sufficient evidence.

{¶16} The first assignment of error alleging that both verdicts were not supported by sufficient evidence is sustained as to the conviction for the lesser included offense related to Count Two, but overruled as to the amended Count Three.

*Manifest Weight of the Evidence*

{¶17} In the second assignment of error, Hooks claims that the verdicts were against the manifest weight of the evidence. Unlike sufficiency of the evidence, the question of manifest weight of the evidence does not view the evidence in a light most favorable to the prosecution.

> **Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."**

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997) (citing Black's Law Dictionary (6 Ed.1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court acts as a thirteenth juror, it still must give due deference to the findings made by the jury.

> **The fact-finder, being the jury, occupies a superior position in determining credibility. The fact-finder can hear and see as well**

> **as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

*State v. Thompson*, 127 Ohio App.3d 511, 529, 713 N.E.2d 456 (8th Dist. 1998). Having found that the conviction for the burglary setting forth the allegations of Count Two was not supported by sufficient evidence, it would be against the manifest weight of the evidence as well. Thus, we need only consider whether the conviction for burglary pursuant to Count Three was against the manifest weight of the evidence.

{¶18} Hooks' sole argument regarding the third count of the indictment was that the State failed to show Hooks' intent to commit a criminal offense while in the house. However, evidence was presented that Hooks had forced his way into the apartment on Oakwood by prying the door open. Testimony was given that the television had been moved from its stand and was found by the door. A reasonable juror could conclude that Hooks had intended to remove the television from the home. Therefore, there was credible evidence to support their determination that Hooks had a criminal intent when he entered the apartment. The evidence does not weigh heavily against conviction and is thus not against the

manifest weight of the evidence. The second assignment of error is sustained as to count one and overruled as to count three of the indictment.

*Amending the Indictment*

{¶19} In the third assignment of error, Hooks claims that the trial court erred by granting the State's motion to amend the indictment to a different offense with a different penalty during the trial. An indictment may be amended during trial as long as that amendment does not change "the name or identity of the crime charged." Crim.R. 7(D). The Supreme Court of Ohio has indicated that if the name of the offense or the identity of the crime charged occurs, then the indictment is improper. *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609. The identity of a crime is changed when the penalty or degree of the offense is altered by the amendment. *Id*. at ¶ 5. "Crim.R. 7(D) does not permit the amendment of an indictment when the amendment changes the penalty or degree of the charged offense * * *." *Id*. at ¶ 9. However, in *Davis*, the State was seeking to increase the charge, not reduce it to a lesser included offense. It did not present a situation similar to this case where the penalty was *decreased* and the amendment was to a lesser included offense. This is significant as it presents no similar grand jury issue as discussed in *Davis,* because in this case, the grand jury had already and necessarily found all of the specific elements to the amended

Burglary offense when it indicted Hooks for the original Aggravated Burglary offense.

{¶20} Both the Eighth District Court of Appeals and the Ninth District Court of Appeals have discussed this same issue in situations where the charge was being reduced to a lesser included offenses. Both courts have determined that allowing the amendment to the lesser included offense does not violate Crim.R. 7(D). We concur with this opinion.

{¶21} In *State v. Simmons,* the Eighth District Court of Appeals allowed an amendment from a kidnapping charge to one of abduction. 8th Dist. Cuyahoga No. 96208, 2011-Ohio-6074. This amendment changed the name and the degree of the offense.

> **"The amendment of a charge 'in an indictment to a lesser included offense does not change the name or identity of the crime charged.' "** *Cleveland v. Smith***, 8[th] Dist. No. 81778, 2009-Ohio-3594, ¶ 6, quoting** *State v. Watson***, 5[th] Dist. No. 2004CA00286, 2005-Ohio-1729, ¶ 10. "[I]f lesser offenses are included within the offense charged, the defendant may be found * * * guilty of * * * a lesser included offense." Crim.R.31(C). Abduction is a lesser included offense of kidnapping.** *State v. Roman,* **8[th] Dist. No. 92743, 2010-Ohio-3593, ¶ 5 * * * .**

*Simmons, supra* at ¶ 49.

{¶22} Likewise, the Ninth District Court of Appeals in *State v. Washington* reached a similar conclusion. 9th Dist. Summit No. 24997, 2010-Ohio-3389. In *Washington*, the defendant was originally charged with Grand Theft in violation of

R.C. 2913.02(A)(1)(4). The State was allowed to amend the indictment to Theft in the same statutory section. The court in *Washington* reasoned that "an amendment to an indictment which charges the defendant with an inferior degree of the original, indicted offense does not violate Crim.R. 7(D)." *Id.* at ¶4.

**{¶23}** Here, the indictment charged Hooks with aggravated burglary in violation of R.C. 2911.11(A)(1), which was a felony of the first degree. However, during the trial, the trial court permitted the State to amend this count of the indictment to a count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree. This amendment changed the name of the offense charged and changed the identity of the offense by changing the degree. However, it amended the charge to a lesser included offense of the original. Burglary is clearly a lesser included offense of Aggravated Burglary as the Aggravated Burglary charge indicted in this case could not have been committed without first committing the Burglary charge to which it was amended. *See State v. Walton*, 8th Dist. Cuyahoga No. 85260, 2005-Ohio-3430, ¶ 27 (determining that Burglary is a lesser included offense of Aggravated Burglary); *State v. Wamsley*, 7th Dist. Columbiana No. 05 CO 11, 2009-Ohio-1858, ¶ 58 (determining that Burglary is a lesser included offense of Aggravated Burglary).

**{¶24}** Moreover, as noted earlier, the grand jury would have already and necessarily found all of the elements necessary for the Burglary in order to indict

-14-

Hooks of Aggravated Burglary. As a result, there was no legitimate rationale to not allow the amendment, particularly when the evidence in this case would have warranted a lesser included instruction on the Burglary offense in the amendment in any event. Thus, it did not violate Crim.R. 7(D). For this reason, the third assignment of error is overruled.

*Sentencing*

{¶25} Hooks alleges in the fourth assignment of error that the sentences imposed were contrary to law. As the conviction as to Count Two has been reversed as being not supported by sufficient evidence, any argument concerning the imposition of consecutive sentences is moot. As a new sentence will need to be imposed upon Hooks, any remaining questions are also moot and will not be addressed at this time by the court. App.R. 12(A)(1)(c).

{¶26} Having found error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Henry County is affirmed in part, and reversed in part. The matter is remanded to the trial court for further proceedings.

*Judgment Affirmed in Part,*
*Reversed in Part,*
*and Cause Remanded.*

**SHAW, P.J. concurs.**
**ROGERS, J. concurs in judgment only.**